**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT LOWINGER, On Behalf of Himself and All Others Similarly Situated,<br><br>PLAINTIFF,<br><br>V.<br><br>TWENTY-FIRST CENTURY FOX, INC., RUPERT MURDOCH, LACHLAN K. MURDOCH, CHASE CAREY, SIR RODERICK I. EDDINGTON, DELPHINE ARNAULT, JAMES W. BREYER, DAVID DEVOE, VIET DINH, JAMES MURDOCH, JACQUES NASSER, ROBERT SILBERMAN and TIDJANE THIAM,<br><br>DEFENDANTS. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Robert Lowinger ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this class action on behalf of the public stockholders of Twenty-First Century Fox, Inc. ("21CF" or the "Company") against 21CF and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which, after spinning off certain of

its businesses into a newly listed company ("New Fox"),[1] 21CF will be acquired by the The Walt Disney Company ("Disney") through TWDC Holdco 613 Corp. ("New Disney"), WDC Merger Enterprises I, Inc. ("Delta Sub") and WDC Merger Enterprises II, Inc. ("Wax Sub") (the "Proposed Transaction").

2.      On June 20, 2018, 21CF and Disney issued a joint press release announcing they had entered into an Amended and Restated Agreement and Plan of Merger (the "Merger Agreement").[2] Under the terms of the Merger Agreement, stockholders of 21CF will receive $38 per share, with the election to receive their consideration, on a value equalized basis, in the form of cash or stock,[3] subject to 50/50 proration and further subject to adjustment for certain tax liabilities (the "Merger Consideration"). The Proposed Transaction is valued at $71.3 billion in cash and stock. Following the completion of the Proposed Transaction, assuming the tax

---

[1] Immediately prior to the close of the Proposed Transaction, 21CF will separate a portfolio of 21CF's news, sports and broadcast businesses, including the Fox News Channel, Fox Business Network, Fox Broadcasting Company, Fox Sports, Fox Television Stations Group, and sports cable networks FS1, FS2, Fox Deportes and Big Ten Network, into a newly listed company that will be spun off to its stockholders, with 21CF stockholders receiving one share of New Fox common stock for each share of 21CF they own. Prior to the completion of the spin-off, New Fox will pay an $8.5 billion cash dividend to 21CF, subject to certain adjustments, representing an estimate of 21CF's tax liability in connection with the spin-off.

[2] 21CF and Disney had previously entered into an Agreement and Plan of Merger dated December 14, 2017 (the "Initial Merger Agreement"), which was subsequently amended. Under the terms of the Initial Merger Agreement, stockholders of 21CF would receive 0.2745 shares of Disney common stock for each share of 21CF common stock they own, subject to adjustment for certain tax liabilities (the "Initial Merger Consideration").

[3] The value of the stock consideration (determined based on the average Disney stock price) will be equal to a number of shares of Disney common stock equal to the applicable exchange ratio. If the average Disney stock price is greater than $114.32, then the exchange ratio will be 0.3324. If the average Disney stock price is greater than or equal to $93.53 but less than or equal to $114.32, then the exchange ratio will be an amount equal to $38.00 divided by the average Disney stock price. If the average Disney stock price is less than $93.53, then the exchange ratio will be 0.4063.

adjustment amount is zero, 21CF stockholders will own approximately 17-20% and Disney stockholders will own approximately 80-83% of the combined company.

3.     On June 28, 2018, 21CF filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that 21CF stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) 21CF's financial projections, including the financial projections relied upon by 21CF's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Centerview Partners LLC ("Centerview"), in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and Centerview; and (iii) Goldman's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as 21CF stockholders need such information in order to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction.

4.     In short, unless remedied, 21CF's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of 21CF common stock.

9.      21CF is a Delaware corporation and maintains its principal executive offices at 1211 Avenue of the Americas, New York, New York 10036. 21CF is one of the world's leading portfolios of cable, broadcast, film, pay TV and satellite assets spanning six continents across the globe. Reaching more than 1.8 billion subscribers in approximately 50 local languages every day, 21CF is home to a global portfolio of cable and broadcasting networks and properties, including FOX, FX, FXX, FXM, FS1, Fox News Channel, Fox Business Network, FOX Sports, Fox Sports Network, National Geographic Channels, Star India, 28 local television stations in the U.S. and more than 350 international channels; film studio Twentieth Century Fox Film; and television production studios Twentieth Century Fox Television and a 50 % ownership interest in Endemol Shine Group. The Company also holds approximately 39.1% of the issued shares of Sky plc ("Sky"), Europe's leading entertainment company, which serves nearly 23 million households across five countries. The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "FOX."

10.     Defendant Rupert Murdoch ("Murdoch") is Executive Chairman of the Company and until July 1, 2015 served as Chief Executive Officer ("CEO") and Chairman of the Company, a role he held since the Company's inception as News Corporation in 1979.

11.     Defendant Lachlan K. Murdoch ("L. Murdoch") is Executive Chairman and has been a director of the Company since 1996.

12.     Defendant Chase Carey ("Carey") has been Vice Chairman of the Board and a consultant to the Company since July 2016 and a director of the Company since 2009 and previously from 1996 to 2007.

13.     Defendant Sir Roderick L. Eddington ("Eddington") has been a director of the Company since 1999 and the Lead Director since 2006.

14.     Defendant Delphine Arnault ("Arnault") has been a director of the Company since 2013.

15.     Defendant James W. Breyer ("Breyer") has been a director of the Company since 2011.

16.     Defendant David DeVoe ("DeVoe") has been a director of the Company since 1990.

17.     Defendant Viet Dinh ("Dinh") has been a director of the Company since 2004.

18.     Defendant James Murdoch ("J. Murdoch") has been a director of the Company since 2007 and its CEO since July 2015 after serving as Co-Chief Operating Officer from 2014 to 2015. Defendant J. Murdoch previously served as the Deputy Chief Operating Officer and Chairman and CEO, International of the Company from 2011 to 2014, after serving as the Company's Chairman and Chief Executive, Europe and Asia beginning in 2007. Defendant J. Murdoch was the CEO of Sky from 2003 to 2007 and has served as a Sky director since 2003

and as its Chairman since April 2016 after previously serving as its Chairman from 2007 to 2012.

19.     Defendant Jacques Nasser ("Nasser") has been a director of the Company since 2013.

20.     Defendant Robert Silberman ("Silberman") has been a director of the Company since 2013.

21.     Defendant Tidjane Thiam ("Thiam") has been a director of the Company since 2014.

22.     The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

23.     Disney, together with its subsidiaries, is a diversified worldwide entertainment company with operations in four business segments: Media Networks, Parks and Resorts, Studio Entertainment, and Consumer Products & Interactive Media. Disney is a Dow 30 company and had annual revenues of $55.1 billion in its fiscal year 2017. Disney's common stock is traded on the New York Stock Exchange under the ticker symbol "DIS."

24.     New Disney is a Delaware corporation and a wholly owned subsidiary of Disney.

25.     Delta Sub is a Delaware corporation and wholly owned subsidiary of New Disney.

26.     Wax Sub is a Delaware corporation and wholly owned subsidiary of New Disney.

**CLASS ACTION ALLEGATIONS**

27.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own 21CF common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal

representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 29, 2018, there were 798,520,953 shares of 21CF class B common stock outstanding and 1,054,032,541 shares of 21CF class A common stock outstanding. All members of the Class may be identified from records maintained by 21CF or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

        a.      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

        b.      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        c.      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

30.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

33.     21CF is an American multinational mass media corporation. The Company was one of the two publicly traded companies formed following the 2013 spin-off of the publishing assets of News Corporation, as founded by Rupert Murdoch in 1979.

34.     21CF is the fourth-largest media conglomerate in the world with a global portfolio of cable and broadcasting networks. The Company operates in three business segments: (1) Cable Network Programming; (2) Television; and (3) Filmed Entertainment.

35.     The Company's Cable Network Programming segment includes FOX News and Fox Business Network, regional sports network Fox Sports Net, Inc. ("FSN"), a 51% ownership interest in the Big Ten Network, FX Networks, LLC ("FX"), and a 73% controlling interest in National Geographic Partners, LLC, among others.

36.     21CF's Television segment includes (i) Fox Television Stations, LLC, which owns and operates 28 full power stations; (ii) FOX Broadcasting Company ("FOX"), which has 207 affiliates ("FOX Affiliates"), including 17 stations owned and operated by the Company; and (iii) Master Distribution Service, Inc. (branded as MyNetworkTV), a programming distribution service.

37.     Finally, 21CF's Filmed Entertainment segment involves (i) motion picture production and distribution, including Twentieth Century Fox Film ("TCFF"), one of the largest producers and distributors of motion pictures, which produces, acquires and distributes motion pictures throughout the world under a variety of arrangements; (ii) television programming, production and domestic syndication distribution, including Twentieth Century Fox Television and Fox21 Television Studios; and (iii) 21CF's motion picture and television library (the "Fox Library"), consisting of varying ownership and distribution rights to several thousand previously released motion pictures and well-known television programs. The Fox Library includes many well-known titles, including, *The Sound of Music*, *Home Alone*, the *Star Wars* series, the *Die Hard* series, and the *X-Men* series, among others.

38.     In addition to its businesses, 21CF holds an approximate 39% equity interest in Sky, the U.K.'s leading entertainment and communications provider, and an approximate 30% equity interest in Hulu, LLC ("Hulu"), the operator of an on-demand video streaming service.

### The Proposed Transaction

39.     On December 13, 2018, the Board approved the Initial Merger Agreement, which the parties executed that same day.

40.     On June 13, 2018, Comcast Corporation ("Comcast") made an unsolicited, nonbinding proposal to acquire 21CF (after giving effect to the separation and the distribution of New Fox shares) for $35.00 per share in cash, subject to an adjustment for transaction taxes. Thereafter, Disney increased its proposed purchase price to $38.00 per share in cash and stock.

41.     On June 20, 2018, Goldman and Centerview each rendered their fairness opinions. Later that day, the parties entered into the Merger Agreement.

42.     Pursuant to the Merger Agreement, following the separation and distribution of New Fox shares to 21CF stockholders, (1) Delta Sub will be merged with and into Disney, and

Disney will continue as the surviving corporation, and (2) Wax Sub will be merged with and into 21CF, and 21CF will continue as the surviving corporation. As a result of the mergers, Disney and 21CF will become direct wholly owned subsidiaries of New Disney, which will be renamed "The Walt Disney Company" concurrently with the mergers.

43.   On June 20, 2018, 21CF issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> **NEW YORK – June 20, 2018 –** Twenty-First Century Fox, Inc. ("21CF") (NASDAQ: FOXA, FOX) announced today that it has entered into an amended and restated merger agreement with The Walt Disney Company ("Disney") (NYSE: DIS) pursuant to which Disney has agreed to acquire for a price of $38 per 21CF share the same businesses Disney agreed to acquire under the previously announced merger agreement between 21CF and Disney (the "Disney Merger Agreement"). This price represents a significant increase over the purchase price of approximately $28 per share included in the Disney Merger Agreement when it was announced in December 2017. The amended and restated Disney Merger Agreement offers a package of consideration, flexibility and deal certainty enhancements that is superior to the proposal made by the Comcast Corporation on June 13, 2018.
>
> Under the amended and restated Disney Merger Agreement, Disney would acquire those businesses on substantially the same terms, except that, among other things, Disney's offer allows 21CF stockholders to elect to receive their consideration, on a value equalized basis, in the form of cash or stock, subject to 50/50 proration. The collar on the stock consideration will ensure that 21st Century Fox shareholders will receive a number of Disney shares equal to $38 in value if the average Disney stock price at closing is between $93.53 and $114.32.
>
> "We are extremely proud of the businesses we have built at 21st Century Fox, and firmly believe that this combination with Disney will unlock even more value for shareholders as the new Disney continues to set the pace at a dynamic time for our industry," said Rupert Murdoch, Executive Chairman of 21st Century Fox. "We remain convinced that the combination of 21CF's iconic assets, brands and franchises with Disney's will create one of the greatest, most innovative companies in the world."

In light of the revised terms contained in the amended and restated Disney Merger Agreement, 21CF's board, after consultation with its outside legal counsel and financial advisors, has not concluded that the unsolicited proposal it received on June 13, 2018 from Comcast could reasonably be expected to result in a "Company Superior Proposal" under the Disney Merger Agreement.

However, the amended and restated Disney Merger Agreement contains no changes to the provisions relating to the Company's directors' ability to evaluate a competing proposal.

As announced on May 30, 2018, 21CF has established a record date of May 29, 2018 and a meeting date of July 10, 2018, for a special meeting of its stockholders to, among other things, consider and vote on a proposal to adopt the Disney Merger Agreement. 21CF has determined to postpone its special meeting of stockholders to a future date in order to provide stockholders the opportunity to evaluate the terms of Disney's revised proposal and other developments to date. Once 21CF determines the new date for 21CF's special meeting of stockholders, the date will be communicated to 21CF stockholders.

### Insiders' Interests in the Proposed Transaction

44.     21CF insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and 21CF's public stockholders.

45.     21CF insiders stand to reap substantial financial benefits for securing the deal with Disney. On February 20, 2018, 21CF made a special grant of restricted stock units to its named executive officers, which will vest 50% upon completion of the Proposed Transaction and 50% on the 15-month anniversary of completion of the Proposed Transaction. The following table sets forth the value of the payments the Company's named executed officers stand to receive in connection with their restricted stock units:

| Name | Shares Underlying Retention RSU Grant (#) | Value of Retention RSU Grant ($) |
|---|---|---|
| K. Rupert Murdoch | 360,873 | 17,383,252 |
| Lachlan K. Murdoch | 569,800 | 27,447,266 |
| James R. Murdoch | 569,800 | 27,447,266 |
| John P. Nallen | 253,244 | 12,198,763 |
| Gerson Zweifach | 189,933 | 9,149,073 |

46.     Further, if they are terminated in connection with the Proposed Transaction, 21CF's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | Golden Parachute Compensation[1] | | | | | | |
|---|---|---|---|---|---|---|---|
| Name[2] | Cash ($)[3] | Equity ($)[4] | Pension / Non-Qualified Deferred Compensation ($)[5] | Perquisites / Benefits ($)[6] | Tax Reimbursement ($)[7] | Other ($) | Total ($) |
| K. Rupert Murdoch<br>Executive Chairman | 39,946,575 | 36,908,576 | — | 15,000 | — | — | 76,870,151 |
| Lachlan K. Murdoch<br>Executive Chairman | 25,616,438 | 58,276,789 | 1,241,000 | 15,000 | — | — | 85,149,227 |
| James R. Murdoch<br>Chief Executive Officer | 25,616,438 | 58,276,789 | 2,777,000 | 15,000 | — | — | 86,685,227 |
| John P. Nallen<br>Senior Executive Vice President and Chief Financial Officer | 18,904,109 | 25,900,769 | — | 51,690 | — | — | 44,856,568 |
| Gerson Zweifach<br>Senior Executive Vice President and Group General Counsel | 13,582,192 | 18,581,385 | — | 74,724 | — | — | 32,238,301 |

**The Proxy Statement Contains Material Misstatements and Omissions**

47.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to 21CF's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

48.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information

12

concerning: (i) 21CF's financial projections, including the financial projections relied upon by 21CF's financial advisors, Goldman and Centerview; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning 21CF's Financial Projections***

49.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

50.     The Proxy Statement sets forth that in connection with Goldman's fairness opinion and its related financial analyses, Goldman reviewed the 21CF forecasts, "which include certain internal financial analyses and forecasts for RemainCo and certain financial analyses and forecasts for Sky . . . and Hulu, LLC, entities in which 21CF holds equity investments provided by the management of 21CF, as approved for Goldman Sachs' use by 21CF, and certain operating synergies projected by the management of 21CF to result from the transactions" (Proxy Statement at 143), which 21CF approved for Goldman's use in its financial analyses ("the "Synergies").

51.     The Proxy Statement fails to disclose, however, any projections or forecasts for Hulu and fails to disclose the Synergies.

52.     With respect to the forecasted financial information for Sky, provided to Goldman by 21CF, the Proxy Statement fails to quantify and disclose the items that were excluded to calculate adjusted EBITDA over the projection period.

53.     The omission of this information renders the statements in the "Certain 21CF Forecasts" and "Opinion of 21CF's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Goldman's and Centerview's Financial Analyses*

54.     The Proxy Statement describes Goldman's and Centerview's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Goldman's and Centerview's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, 21CF's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Centerview's fairness opinions in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to 21CF's stockholders.

55.     With respect to Goldman's *Implied Value and Multiple Analysis*, the Proxy Statement fails to disclose the estimated calendar 2018 EBITDA for RemainCo, both including Synergies and excluding Synergies.

56.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) 21CF's net debt and minority interests utilized in the analysis; (ii) quantification of the value of the unconsolidated assets (including the 30% interest in Hulu, but excluding the 39% interest in Sky), of RemainCo, in each case as of June 30, 2018; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5% that Goldman applied in the analysis.

57.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of New Disney, the Proxy Statement fails to disclose: (i) the unlevered free cash flows to be generated by Disney for October 1, 2019 through September 30, 2023, utilized by Goldman in the analysis, as well as the underlying inputs; (ii) New Disney's net debt and minority interests utilized in the analysis; (iii) quantification of the value of the unconsolidated assets (including the 60% interest

in Hulu, and the 39% interest in Sky), of New Disney, as of September 30, 2019; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.75% to 8.75% that Goldman applied in the analysis.

58.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in the analysis; (ii) quantification of the value of the unconsolidated assets (excluding the interests in Hulu, LLC, and Sky); and (iii) quantification of the inputs and assumptions underlying the discount rate of 9.75% that Goldman applied in the analysis.

59.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of 21CF's 30% interest in Hulu and its 39% interest in Sky, the Proxy Statement fails to disclose: (i) the time period covered in the analysis; (ii) estimates of revenue for Hulu for future years; (iii) estimates of EBITDA for Sky for future years; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 10.5% to 12.5% and 7.75% that Goldman applied to Hulu and Sky, respectively, in the analysis.

60.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis* of New Disney, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in the analysis; (ii) quantification of the value of the unconsolidated assets (excluding the interests in Hulu and Sky); and (iii) quantification of the inputs and assumptions underlying the discount rate of 8.5% that Goldman applied in the analysis.

61.     With respect to Goldman' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the net debt and minority interests utilized in the analysis; and (ii) the value of the unconsolidated assets (including the 30% interest in Hulu, but excluding the 39% interest in Sky), of RemainCo, in each case as of June 30, 2018.

62.     With respect to Centerview's *Selected Public Company Analysis* and *Selected Precedent Transaction Analysis* for RemainCo, the Proxy Statement fails to disclose: (i) 21CF's net debt as of June 30, 2018 attributed by 21CF management to RemainCo; and (ii) estimated values for RemainCo's interest in Sky, Hulu, other unconsolidated assets, and certain minority interests in RemainCo subsidiaries.

63.     With respect to Centerview's *Discounted Cash Flow Analysis* of RemainCo, the Proxy Statement fails to disclose: (i) RemainCo's terminal year estimate of unlevered free cash flow utilized by Centerview in the analysis; (ii) 21CF's net debt utilized in the analysis; (iii) estimated values for RemainCo's interests in Sky, Hulu, other unconsolidated assets, and certain minority interests in RemainCo subsidiaries; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25% that Centerview applied in the analysis.

64.     With respect to Centerview's *Selected Public Company Analysis* of Disney, the Proxy Statement fails to disclose the estimated EBITDA to be generated by Disney's consolidated assets for the fiscal year ending September 30, 2019.

65.     With respect to Centerview's *Discounted Cash Flow Analysis* of Disney, the Proxy Statement fails to disclose: (i) the unlevered free cash flows of Disney's consolidated assets over the period beginning July 1, 2018 through September 30, 2023, utilizing the 21CF Disney forecasts and assumptions discussed with 21CF management, utilized by Centerview in the analysis; (ii) Disney's terminal year estimate of unlevered free cash flow utilized in the analysis; (iii) estimated values for Disney's interest in Hulu; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.0% that Centerview applied in the analysis.

66.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

67.     The omission of this information renders the statements in the "Certain 21CF Forecasts," "Certain Disney Forecasts" and "Opinions of 21CF's Financial Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Conflicts of Interest***

68.     Further, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Goldman.

69.     The Proxy Statement sets forth that "[a]t the request of 21CF, an affiliate of Goldman Sachs has entered into financing commitments to provide New Fox with a Senior Unsecured 364 Day Bridge Facility (aggregate principal amount of $9 billion) in connection with the consummation of the transactions, subject to the terms of such commitments. An affiliate of Goldman Sachs may also act as a lead underwriter, initial purchaser, placement agent, arranger and bookrunner in connection with New Fox's possible incurrence of permanent debt financing." (Proxy Statement at 152). The Proxy Statement fails, however, to disclose (i) when the Company asked affiliates of Goldman to provide financing to New Fox and act as a lead underwriter, initial purchaser, placement agent, arranger and bookrunner in connection with New Fox's possible incurrence of permanent debt financing; and (ii) whether the full Board was aware of and

17

discussed this conflict before (a) Goldman's engagement to act as the Company's financial advisor; and (b) Goldman issued its fairness opinion.

70.     Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, 21CF stockholders are entitled to full disclosure of Goldman's conflicts and the Board's awareness and evaluation of these conflicts.

71.     The omission of this information renders the statements in the "Background of the Transaction" and "Opinion of 21CF's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

72.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**COUNT I**

**CLASS CLAIMS AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND SEC RULE 14A-9 PROMULGATED THEREUNDER**

73.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisors, the actual intrinsic standalone value of the Company, and potential conflicts of interest faced by the Company's financial advisor, Goldman. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

76.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

77.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

78.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### CLASS CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT

79.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of 21CF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of 21CF and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

81.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

83.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

84.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, 21CF's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of 21CF, and against defendants, as follows:

A.     A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to 21CF stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: July _, 2018                    Respectfully Submitted,

                                       NAPOLI SHKOLNIK, LLC
                                       /s/      DRAFT DRAFT
                                       R. Joseph Hrubiec, Esq. (#5500)
                                       919 Market Street
                                       Suite 1801
                                       Wilmington, Delaware 19801
                                       (302) 330-8025

                                       Aaron Brody
                                       **STULL, STULL, & BRODY**
                                       6 East 45th Street
                                       New York, NY 10017
                                       Telephone: (212) 687-7230
                                       Facsimile: (212) 490-2022
                                       Email: abrody@ssbny.com

                                       *Attorneys for Plaintiff*